RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA BECKER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REAL ESTATE HEAVEN INTERNATIONAL, INC., a California corporation,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

This case addresses a disturbing trend whereby realtors cold call consumers without consent violating the Telephone Consumer Protection Act. Plaintiff Cynthia Becker ("Plaintiff Becker" or "Becker") brings this Class Action Complaint and Demand for Jury Trial against Defendant Real Estate Heaven International, Inc. ("Defendant REH Real Estate" or "REH Real Estate") to stop the Defendant from violating the Telephone Consumer Protection Act by sending telemarketing text messages *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff Becker, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Cynthia Becker is a resident of Bell, California.

2. Defendant REH Real Estate is a California registered corporation headquartered in Pasadena, California. Defendant REH Real Estate conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District. Venue is proper in this District since REH Real Estate has its headquarters in this District and because Plaintiff resides in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in January 2021 alone, at a rate of 129.6 million per day. www.robocallindex.com.

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

16. In recent years a troubling trend has surfaced in the real estate industry where real estate agents are cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

17. This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls without their consent and in violation of the TCPA.

**COMMON ALLEGATIONS**

18. REH Real Estate is a real estate corporation that works with consumers to purchase and sell properties for a profit.

19. The CEO/Founder of REH Real Estate is Paul Argueta.

20. Argueta also works as an active realtor for REH Real Estate.



### CEO, Founder

Paul Argueta

Paul Argueta is a native Los Angeleno who grew up in the Highland Park & Eagle Rock communities of Los Angeles. He attended Eagle Rock High School and studied Economics as an undergrad at UCLA (94-99). At the age of 18, he acquired his California Real Estate Salesperson License and has been an active agent for 20 years. In 2007, he was featured in the *LA Times* TWICE for his expertise in residential real estate sales and unique niche marketing. In 2014, Trulia & Real Trends ranked him in the top 0.1% of all agents nationwide. In 2013, he was ranked #443 on the Hispanic Business 500 List comprised of the 500 Largest US-Hispanic Owned Businesses AND that same year was ranked on the Top 250 Latino Real Estate Practitioners in the Nation by the National Association of Hispanic Real Estate Professionals. In 2010, he founded his own real estate company and in 2014, Inc. Magazine recognized his firm as one of the FASTEST GROWING privately held companies in America on their 2014 Inc 5000 List.[3]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://rehrealestate.com/about-us/

21. Argueta in his role as CEO of REH Real Estate provides real estate training to REH Real Estate realtors.[4]

22. REH Real Estate trains its realtors to place unsolicited calls/text messages to consumers in order to generate business.

23. In placing unsolicited calls/text messages to consumers, REH Real Estate is placing multiple calls/texts to phone numbers that are registered on the DNC, such as Plaintiff's number.

24. In response to these calls/texts, Plaintiff Becker files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

**PAUL ARGUETA ENGAGES IN AND DIRECTS REH REAL ESTATE REALTORS TO ENGAGE IN COLD CALLING**

25. Argueta, in his capacity of CEO of REH Real Estate, provides training to REH Real Estate realtors through the REH Real estate website and YouTube.

26. Argueta posted an article and video on REHRealEstate.com entitled – "The Complete Guide to Cold Calling for Real Estate Agents:

---

[4] https://rehrealestate.com/blog/free-video-training-for-real-estate-agents/

CLASS ACTION COMPLAINT
-5-



[5]

27. In the article, Argueta specifically states, "I hate making Cold Calls. *But I do them*."[6]

28. Argueta then goes on to state, "Our profession, like almost any job, has its dark sides, and one of them is cold calling,"[7] and later, "I've spent the last 20 years of my career prospecting over the phone and I've built 3 multi-million dollar companies doing it."

29. On his own website PaulArgueta.com, Argueta posted an article regarding cold calling entitled – "A Cold Call Script For Real Estate Agents Who Hate Cold Calling."[8]

---

[5] https://rehrealestate.com/videos/the-complete-guide-to-cold-calling-for-real-estate-agents/
[6] *Id.*
[7] *Id.*
[8] https://paulargueta.com/a-cold-call-script-for-real-estate-agents-who-hate-cold-calling/

30. This article promotes the importance of cold calling to generate real estate business and provides training on how to conduct cold calls effectively through the use of a script Argueta wrote in order to close more sales.

31. Argueta posted a video and article on REHRealEstate.com featuring a training session Argueta held with REH Real Estate realtors regarding placing unsolicited calls to consumers with expired property listings wherein the property was listed by a realtor but did not sell:



32. In the video that is attached to the article, Argueta provides training on how to source consumer cell phone numbers based on his own personal experience stating, "I use an auto dialer. Okay? Now there was a time where I was a little bit more crazy and I have 2 headsets. Mine, right, and I have one laptop running Mojo and I'd have another laptop running Vulcan and whichever one

---

[9] https://rehrealestate.com/videos/expired-listing-video-training/

answered first was who I would speak to, okay? And it was pretty intense. Alright? And so I will say that I don't necessarily recommend doing that until you're a little more advanced but it works. **_Okay, so there's Vulcan7, there's MojoSells, there's RedX and then there's ArchDialer._** Okay, you can research that ones that you like, figure out the one that fits your business model. **_My recommendation is Vulcan and Mojo. Okay? Now as far as I can tell Vulcan is much more accurate on the telephone numbers that it provides. In other words, I'm able to reach people on their cell phones…_**"[10] (emphasis added)

## PLAINTIFF BECKER'S ALLEGATIONS

33. Plaintiff Becker registered her cell phone number on the DNC on August 29, 2006 for the express purpose that she would not receive unsolicited calls.

34. Plaintiff Becker's phone number is not associated with a business and is used for personal use only.

35. On February 18, 2021 at 6:55 PM, Plaintiff received 2 identical unsolicited text messages that were sent by Defendant, from phone number 323-880-1501 to her cell phone:

---

[10] https://www.youtube.com/watch?v=bbje1TfaPrY - 11 minutes, 9 seconds



36.     The text messages that Plaintiff received are solicitations encouraging the sale of Plaintiff's home that would earn revenue for the REH Real Estate agent who sent her the text messages.

37.     The text messages were sent on or on behalf of Defendant's CEO, Paul Argueta, and reference his California real estate license number 01223040 which belongs to Argueta:

**STATE OF CALIFORNIA**
**DEPARTMENT OF REAL ESTATE**

In reviewing a licensee's information, please be aware that license discipline information may have been removed from a lic 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal line at 1-877-373-4542.
The license information shown below represents public information. It will not reflect pending licensing changes which are bei mailing addresses of real estate licensees are included, this information is not intended
Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance wi Flag Section.

License information taken from records of the Department of Real Estate on

| | |
|---|---|
| License Type: | BROKER |
| Name: | Argueta, Paul Raymond |
| Mailing Address: | 898 N FAIR OAKS AVE SUITE A PASADENA, CA 91103 |
| License ID: | 01223040 |
| Expiration Date: | 08/12/22 |
| License Status: | LICENSED [11] |

38.  Plaintiff Becker was not, and is not interested in selling her property. She was not looking to solicit the services of any real estate agents.

39.  Plaintiff Becker has never provided her phone number to or consented to be called by REH Real Estate or any of its realtors.

40.  The unauthorized solicitation telephone text messages that Plaintiff received from REH Real Estate, as alleged herein, have harmed Plaintiff Becker in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

41.  Seeking redress for these injuries, Plaintiff Becker, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing text messages to telephone numbers that are registered on the DNC.

---

[11] https://www2.dre.ca.gov/PublicASP/pplinfo.asp?start=1

## CLASS ALLEGATIONS

42. Plaintiff Becker brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called/texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called/texted Plaintiff, and (5) for whom Defendant claims it obtained the person's number in substantially the same manner it obtained Plaintiff's number.

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Becker anticipates the need to amend the Class definitions following appropriate discovery.

44. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant REH Real Estate systematically sent multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to send the texts;

    (b)    whether Defendant REH Real Estate's texts to Plaintiff and other consumers were sent for telemarketing purposes;

    (c)    whether Defendant's conduct constitutes a violation of the TCPA; and

    (d)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Adequate Representation**: Plaintiff Becker will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Becker has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Becker and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Becker nor her counsel have any interest adverse to the Class.

47. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Becker.

Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Registry Class)

48. Plaintiff Becker repeats and realleges paragraphs 1 through 47 of this Complaint and incorporates them by reference.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

51. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal

government.

52. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call/text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

53. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

54. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Becker, individually and on behalf of the Class, prays for the following relief:

55. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Becker as the representative of the Class; and appointing her attorneys as Class Counsel;

56. An award of actual and/or statutory damages and costs;

57. An order declaring that Defendant's actions, as set out above, violate the TCPA;

58. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

59. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Becker requests a jury trial.

DATED this 24th day of March, 2021.

        **CYNTHIA BECKER**, individually and on behalf of all others similarly situated,

        By: */s/ Rachel E. Kaufman*
        Rachel E. Kaufman
        rachel@kaufmanpa.com
        KAUFMAN P.A.
        400 NW 26th Street
        Miami, FL 33127
        Telephone: (305) 469-5881

        *Attorney for Plaintiff and the putative Class*